Good morning, Your Honors. Stephen Doniger for the petitioner. At this time, I'd like to please reserve seven minutes for rebuttal. You'll have to keep an eye on the clock yourself. Understood. Your Honors, the copyright law exists, the Copyright Act exists, to serve an underlying idea that we're richer as a society when more people are creating more artwork. And it does that by saying, by not giving anyone a monopoly on ideas, but by saying that no one can copy another company or person's particular artistic expression of those ideas. In this case, the petitioner, Meridian Textiles, has an in-house design team. They have artists that create artwork specifically so that those in the apparel industry can have a constant flow of new and aesthetically appealing designs. And in fact, that's critical to their business model. They generate business by having a library of original artwork. And the respondents, Topson Downs, they were a customer. And they sampled four different designs. And this lawsuit came about because those four designs, or what our client thought were unauthorized reproductions of them, were found on garments at major retail stores. Now, the court drew this case out, finding that one of those designs was not protectable and that the other three were not substantially similar. Counsel, it helps this court if you don't use newspaper terms like threw the case out. I understand. Granted motion for summary judgment, right? Understood, Your Honor. The court granted summary judgment, finding that a zebra design is not subject to copyright protection. I think that decision is clearly erroneous. Under this court's past decisions, specifically Oropastal and the Seteva case, it's clear that artistic renderings of animals, whether lifelike or not, are protectable to the extent that there are a wide variety of ways of demonstrating and depicting those designs. Can I ask you a question about that? So I know the zebra stripes aren't exactly linear. They're more interesting than that. But just as a hypothetical, if you think of black and white stripes, they're linear. So you could have thick ones and you could have thin ones. But perhaps over time, as people have more and more designs, eventually you might have all of the possible combinations of black and white stripes. If that were to happen, would it become the case that there's no ability to copyright a black and white stripe pattern? No, Your Honor. Copyright law does not give someone a monopoly on their artwork. If two people independently create substantially similar or even identical artwork, each one would have a copyright in their work. Copyright, as the name suggests, is the right to copy. And so the issue here is, was protectable artistic expression copied? Independent creation is always a defense to a copyright infringement case. But so if you independently create something that looks just exactly like something else and it's not that original because it's just black and white stripes, it's still the case it could be copyrighted? Yes. It can be copyrighted, but there would not be an infringement. If two works are independently created that are very simple works that are entitled to copyright protection, both authors can claim copyright protection in their work. And neither can claim infringement because there's been no copying. The hallmark is the copying. And so... But what if someone does copy one then? So two people make the same black and white stripes. They both copyright them. The third person sees number two and copies it. Right. Then number two would have a claim for copyright infringement. Number one would not. If number one says, hey, you copied my design. And number two says, no, in fact, I copied that person's design. Number one would not have a claim, assuming that number two was in fact independently created. The court then granted summary judgment on the other three claims. I'm going to discuss all four together because I believe that as a first step under the Oropestal decision, which the Ninth Circuit said where there are a gazillion ways to, and that was the court's design, that it's going to be entitled to broad protection. A zebra stripe, as I indicated in the briefs, much like a fingerprint or a snowflake, there really are an infinite number of ways to draw zebra stripes. So it should be subject to broad protection. If we begin with the premise that all four designs are entitled to broad protection, the next question for this court then becomes what's the appropriate manner to determine whether or not there was copying. And in Croft, the Ninth Circuit set forth the two-part test of extrinsic and intrinsic similarity. And Croft is very instructive because what it says is that the extrinsic test is a test of whether or not the basic idea was taken. And the intrinsic test is more subjective. Was there the artistic expression of that idea taken? Now what Croft tells us is that under the extrinsic test, that's where you do analytic dissection. You start to break things apart. And in this case, what the district court did was it applied that analytic dissection to the intrinsic test. Because I don't think there can't be any real question that the idea of the two designs is the same. One of the arguments, the idea if you described it is the same. The zebra print, the idea is the same. The multi-animal print, three prints, there's a dispute as to whether one of the prints is the same, but the layout of them, the idea under the extrinsic test is the same. The only thing left then is the intrinsic test. And I don't think there can be any real question under the intrinsic test where analytic dissection is not appropriate. And Croft specifically says this should generally be left to the jury. Absent the most extraordinary circumstances, summary judgment was just erroneous in this case. In fact, we contend that it should have been granted in favor of Meridian as the moving party. I see that, oh no, I'm sorry, I still have a minute left on my time. I apologize. On the sui spondi motion for summary judgment granted for the defendant, is it your point that the court was without power to enter that judgment? No, the court certainly has the power to grant, in appropriate cases, to grant summary judgment sui spondi. My point... But isn't your point that under Rule 56 you should be given some notice in order to be able to rebut the suggestion that there's no tribal issue of material fact? Absolutely. Under most circumstances, well, due process basically requires that before we suggest our motion for summary judgment being denied, that the court give us an opportunity to address any grounds... Are you basing yourself on some notion of due process under the Fifth Amendment or under the statute of Rule 56 as a federal rule of procedure? Under the statute of Rule 56. I'm not making a pass. Where do you find any restraint on the sui spondi power of the district court in Rule 56? Well, I think it's inherent on the Supreme Court's ruling that in Anderson versus Liberty Lobby that the evidence on all parties of the non-movement, or really more appropriately the party against whom summary judgment is being contemplated, that all justifiable inferences should be drawn in its favor, and the ability of a party to seek leave of court to add supplemental evidence... What I'm trying to do is to find some case that says a district court that is contemplating sui spondi violates Rule 56 unless it gives some notice to the party against whom it intends to enter judgment 10 days, 20 days to file any opposing papers or further evidence. Do you find any case that says that? As I sit here right now, I can't quote you a case that says that. Isn't that what our Buckingham case says? It may be. I don't have the case in front of me, and I don't want to agree with something I don't actually... I think Buckingham says you do need to get notice, but doesn't Cool Fuel also say that the judge can't grant sui spondi summary judgment unless there's no question in the record? Don't we have this issue here of these unauthenticated exhibits? If the judge had given you an opportunity to authenticate those exhibits, could you have? Of course. In fact, we dispute that the exhibits were in fact unauthenticated. As indicated in our moving papers, the declaration of Howard Deutschman, the principal of Meridian, included images of the garments and CADs of the design. What about authenticating the physical exhibits? Well, the physical exhibits are exactly the same. If he says here are the... It's impossible to attach physical exhibits to a declaration. All we can do is attach the images to the declaration and then submit the exhibits to the court concurrently. And I note that in... And you had done that by the time of your reply brief? Yes. The reply brief specifically indicated that the physical exhibits were being lodged, and the court in its order on reconsideration admitted that it had received those exhibits concurrent with the reply brief. And that's in the excerpts of record 551. I want to reserve time for my rebuttal, but I do want to also note that the Ninth Circuit in Foster versus Goodale said, and I quote, at the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents. And I don't think there's any real dispute or question that the garments would have been admissible at trial with the proper foundation being laid, which we think that it was through the declaration of Mr. Deutschman. I'm going to take my remaining almost four minutes and save it for rebuttal. So thank you very much. Good morning, Your Honors. Erica Van Loon on behalf of Appalese, Tops and Downs of California, Target, and Walmart. It is Appalese's contention in this case that the lower court got it exactly right. As Your Honors know, the lower court noted that the zebra design in this case was a design that did not extend to familiar designs and that there was nothing recognizably the artist's own in the zebra design. So are you basically saying that no zebra design is copyrightable? I'm not saying that no zebra design is copyrightable, but the zebra design that Meridian purportedly created is a classic zebra design. It's a classic imitation of our expert showed and as can be seen in our answering brief, it is impossible to even differentiate Meridian's zebra design from the prior art. So you disagree with his description that if you create something on your own that happens to copy something else that it can be copyrightable? I do disagree with that. I do not think that that is the law. I think the law says that there must be more than a mere trivial variation in order to get copyright protection. So no, copyright does not extend to designs as they appear in nature as the SATAVA case has instructed us. And in this particular case, the zebra design that Meridian purportedly created is not subject to copyright protection in our opinion. What could make a zebra design copyrightable then? Well, I mean, if it was more of a stylized design, I mean, if it taught away more from the classic look of a zebra itself, then I suppose it's possible if they created something novel. But I mean, even though... So why isn't that a fact question for the jury, whether this design meets the criteria you just gave? Because I mean, there's a long presidential standard in the Ninth Circuit for the court determining as a matter of law when applying the extrinsic test that objectively you can look at the protectable elements as between Meridian's design and Apolli's designs. And objectively, you know, there really are no protectable elements in the zebra design that Meridian Court did here, if that answers your question. There's also three other designs at issue in this case. Now, the lower court found that those designs were valid, but that they were not substantially similar to Apolli's designs. We believe there are other grounds for finding that summary judgment should be affirmed as well. For example, with regard to the animal design, Apolli's have put forth evidence that the design is an exact copy from a clip art book called Belvedere, published in 2006, before Meridian's purported copyright registrations were registered. And we have submitted evidence in our brief at pages 37 to 39, showing a comparison of the clip art book to Meridian's supposed animal design. But you could have pieces of a design that are copied and still have the arrangement of them be original, right? Yes, you could. But in this example, this is an exact copy of something that occurred prior to Meridian's registration. Have you shown that the exact arrangement existed prior? I thought just the pieces had been in the clip art book, according to you. Well, the idea of a multi-animal print design is not novel. I mean, there are many examples in the public domain of a multi-animal print design. Meridian cannot own the idea of a multi-animal print design. It can only own the specific expression of that design. And that specific expression is exactly the same as what appears in the Belvedere copyright clip art book. Sorry, say that again. The exact what appears in the clip art book? The exact iteration of that design appears. But not the combination of the three. I don't know what you mean by iteration. You're right. The designs are separate in the clip art book. But the idea of an animal print being combined is not original to Meridian. And there's many examples that our experts have put forth showing multi-animal print designs. Nonetheless... There were three animals involved here. Were there a zebra, a cobra? Yes. It was a zebra, a cheetah, and ours had a giraffe. And I think theirs had a cheetah. So are you conceding that the arrangement of those three animal designs by Meridian was original? The arrangement, not the specific design of each animal? We contended that it was not based on the prior art that... Does your expert say that the arrangement of those three animal designs came out of a clip book? No, she does not. That is correct, Your Honor. So, I mean, even if I were to say that the arrangement is entitled to some protection under our copyright law, we believe that at most it would be entitled to thin protection. I mean, again, it's... But the Muslim Summary Judgment said no protection. That... Well, we argued alternative theories as to which the multi-animal print is either invalid or not infringed. So in Judge Klausner's Summary Judgment order, he actually found that the multi-animal design was entitled to broad protection. But then he went on to say that the design was in fact invalid. So what I was arguing was an alternative theory to affirm Summary Judgment in this case, that the design is in fact invalid. However, if the court finds that the design is valid... Did you cross-appeal the ruling that the copyright was valid? No, we didn't cross-appeal, but it is De Novo Review, so... De Novo Review of what we're asked to review, but you didn't ask to review Judge Klausner's determination that the three designs were entitled to... They had valid copyright, but that there wasn't any substantial infringement. The first part of that, you didn't ask us to review it, did you? Not by way of cross-appeal, no, Your Honor. I did not. However, if this court were to do its own analysis, we believe that it could apply the... Could determine that even if Meridian's animal design is valid, it's only entitled to thin protection. But even if it was entitled only to thin protection, it could have been copied here, right? So we get to the infringement point, don't we? Yes, you would still get to the infringement point. It would just be a different test and a substantial similarity. So we would be under the virtual identity test, which is a higher standard. But even under that test, I have trouble seeing how the district court could grant sua sponte summary judgment here. My understanding is that, for whatever reason that I don't entirely understand, there were sort of blurry pictures in the record. And then later, there were these other pictures in the record that maybe were submitted later, or maybe weren't perfectly authenticated that happened around the time of the reply brief. But to grant sua sponte summary judgment, the judge had to look at the whole record, whether it was at the reply brief stage or not. I mean, they didn't have an obligation to move for summary judgment. They could have waited to do this trial. How can the judge not look at those other exhibits and still grant you summary judgment sua sponte? I just don't see how this was appropriately done. Well, I mean, first of all, the evidence that the lower court considered and, first of all, denying plaintiff's motion for summary judgment, which they brought indicating that they thought that this could be decided as a matter of law on summary judgment, right? But the court looked to the evidence that Meridian proffered in support of its motion for summary judgment, which was evidence attached to the Deutschman Declaration, which consisted of the deposits that Meridian submitted to the Copyright Office and photographs of the accused garments. Sealer v. Lucas teaches that that is exactly the correct analysis. The court is supposed to if these fabric designs were submitted, which, by the way, to this day, Appley has never seen these supposed fabric designs once in this case. We have no idea whether they are an exact copy of Meridian's deposits. We don't know what they are. They're unauthenticated. And it's interesting that they were never put forth in the record on the motion for summary judgment. They were never cited anywhere in Meridian's reply papers. And even when Meridian brought this appeal to the Ninth Circuit, the fabric samples were not submitted as part of the excerpts of record, leaving Appley's, you know, once again... Well, they tried. They filed a motion. They still are trying. They filed a motion to give us the physical exhibit. After our answering brief was due. Yeah, it was after our answering brief was due. So they did the same exact thing they did to us in the lower court. They tried to put it in after we didn't have an opportunity to respond. So... But you responded to their motion. I mean, there's briefing on the motion about whether they should be able to submit this physical exhibit. What happened is the lower court issued the order on the motion for summary judgment. And, you know, Meridian got a second bite of the apple. They brought a motion for reconsideration under federal Rule 60. Now, there really were no grounds under Rule 60 to consider. There were no new facts or new law. However... Except that they were able to say, wait a second, now you've granted sua sponte summary judgment. And there were these things in the record that you didn't consider. And then the district court said, you're right. I didn't consider them. He didn't think he had to consider them because they weren't the evidence that Meridian proffered on its motion for summary judgment. But it's one thing to deny them summary judgment and say they need to go to trial and then they can do authenticate whatever they need to at trial. It's another thing to end the case by granting you summary judgment. But it is a little curious that the fabric samples were not put in evidence on Meridian's motion. And again, we're not putting evidence on Meridian's opening brief to this court. We don't know what these fabric samples are. We have no idea. But isn't that a reason why we need to send it back for the district court to think about this? I mean, if we don't know what they are and if they show that you made an exact copy, why shouldn't they have an opportunity to try to show that? Because that's not what the court is supposed to compare. That's not the right test. I mean, L.A. Printex, Sealer v. Lucas, they both teach that the correct test is for the court to compare the deposit, the design deposited with the copyright office to defendant's accused design. I thought the physical exhibits are your shirts, aren't they? No. What are they then? Well, I mean, nobody knows. I don't know. I'm sure Mr. Doniger could tell us. But to this day, we've never seen them. But my understanding is that they were the fabric representation of his copyright deposits. So first of all, are there physical copies of the shirts that you were selling in the record? Not in the record for summary judgment, no. But in discovery, yes, they were produced. Counsel, we're reviewing this de novo. How do you expect us to decide that? In the light most favorable to the plaintiffs. But all I'm trying to articulate is that is, in fact, the correct test. You're supposed to compare the deposit submitted to the copyright office. And then the only way that the court would consider the fabric sample version of Meridian's copyright is if the court determined that they were a true and correct copy of what was submitted to the copyright office. But we're on de novo review. We can't affirm summary judgment in your favor. We have nothing in front of us. But you do have what you need in front of you, which is the copyright deposits. That is the evidence the court is supposed to look at in determining what plaintiff, whether plaintiff has a valid copyright. That is the right evidence to look at. And it is supposed to be compared to defendant's work. And there are many, many, many pictures in the record, you know, in the Deutschland Declaration, in our opposition to plaintiff's motion for summary judgment. And again, in all of the papers submitted in regards to the motion for reconsideration, there's many images that can be seen of defendant's work. So, I mean, everything was in the record for the court to look at. All right. I don't think there are any further questions. If you have no further presentation. I just wanted to know if you wanted to talk about any of the other designs at issue. I mean, there was also a burnout design and a lace design. And as your honors have noted, the lower court found that those designs were entitled to broad protection. However, the court applied the extrinsic test and determined that the copyright deposits of Meridian were not substantially similar to the designs of the defendants. We believe that there are alternative grounds for affirming summary judgment as well. Namely, that the burnout, again, should only be entitled to thin protection because it is the result of mechanical process. There's nothing done by the creator to create the burnout design. It's part of a technical process. And it should, therefore, be considered under the virtual identity standard. And either under the substantial similarity standard or the virtual identity standard, we do not believe that the designs are similar. And we believe it was proper for the court to apply the objective test the extrinsic analysis to find that defendants' designs had not infringed. Thank you very much. Your time has expired. Mr. Doniger, you have, I believe, about three and three quarter minutes. Thank you, your honor. How do you meet the appellee's argument that you didn't produce the claim comparable infringements? That's not true. As indicated in the excerpts of record ER 372, Meridian's reply brief specifically advised the court that, quote, the garments at issue in this case and full repeats of plaintiff's designs will be lodged with the court. And what we requested of this court to be able to lodge with it are exactly what we lodged with the court, with the district court. In fact, this is in the exact form that it was submitted to the court. And I've brought you, although our motion hasn't been ruled on yet, I brought it here. But what we advised the court and what's in the record is that's exactly what we did, was we put the garments at issue. So their shirts are in that. Their shirts that were authenticated in the Deutschman Declaration were submitted to the court and in the court's possession. And the court refused to look at them. And the court refused to look at them. And on the grounds that they weren't authenticated? Presumably. I mean, you've seen the court's ruling as much as I have. Whatever the real reason is. Well, let's parse the term unauthenticated. An affidavit or declaration for use in summary judgment has to be based on the personal knowledge of the declarant. Was there a declaration accompanying the shirts that the declarant had gone to a shop selling Tops and Downs shirts and purchased these shirts? And these were the shirts? And he so identified them? Yes, Your Honor. The Deutschman Declaration ER 405 to 406 and the following exhibits authenticate the garments as having been purchased by the plaintiff. What? Wait, ER 405, say the ER numbers. I'm not sure you have that right. I have 405 and 406. Those look like pages of a brief. Are those not the pages from the? I don't think so. Okay, then maybe I'm misciting it. But it's the declaration attached to the underlying summary judgment motion. I apologize if I had the wrong page numbers. And what did the judge in district court find was missing as far as the authentication? I don't believe he specified. He just came out with a conclusion. It's authenticated. And gave that generic side about pigs hunting for truffles. But in sui fonte summary judgment, you have to hunt for truffles, right? Correct. And I'd also submit, Your Honor, that I think that there's a party admission that those are in fact the garments since the defendant's own opposition papers incorporated the same images of the same garments as the garments at issue. But not the garments themselves. Well, no, we had the physical garments. Now, defendants also cite to Seeler as the case that says you have to compare the work to the deposit copy. But Seeler is a case where the original work was not available. And the only copy was a copy created after the defendant created their work. It's inapplicable to this case. But again, in this case, we did submit the deposit copy. There's no dispute of that. We also then offered a full repeat of it printed on fabric, which Oropa Stahl and other courts have said is the appropriate way to look at these designs. Oropa Stahl recognized there could be differences due to the fabric printing process, which, quite frankly, we believe account for any of the perceived differences between the designs. The court should have either granted summary judgment in favor of plaintiff upon considering all the evidence or simply denied the summary judgment motion. And we're going to ask this court on its de novo review to either consider the evidence presented and grant summary judgment in favor of Meridian or simply deny that reverse and with an instruction to just enter a denial of that motion. All right. Thank you very much. The case of Meridian v. Thompson Downs will be marked submitted. We thank counsel for their informative presentation.
judges: Bea, Friedland, Rice